UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

VERA CLARK,

    Plaintiff,

v.

                              Case Number 11-14285
                              Honorable Thomas L. Ludington

SODEXHO, INC., et al.,

    Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Plaintiff Vera Clark was employed as a cook by St. Mary's Hospital in Saginaw, Michigan, and was a member of the United Steelworkers of America ("USW") Local Union 9899. Defendant Sodexo Management, Inc. ("Sodexo Management") manages the food service operations at St. Mary's Hospital. Defendant Lynn Bell is employed by Sodexo Management as the Director of Nutritional Services at St. Mary's Hospital.

On February 5, 2005, USW and St. Mary's Hospital entered into a collective bargaining agreement ("CBA") that was extended in February 2009. ECF No. 9 Ex. 1. USW is the exclusive collective-bargaining representative within the meaning of the National Labor Relations Act, 29 U.S.C. § 159(a), for certain employees – including Plaintiff – at St. Mary's Hospital. *Id.* at 2. St. Mary's CBA governs the employment relationship between union represented employees and St. Mary's Hospital, and includes provisions governing personal leaves of absence, bereavement leaves, and disciplinary actions. *Id.* at 14, 25, 30.

On August 11, 2009, Plaintiff left work as a result of a family emergency. She had been advised that her sister-in-law was very ill, which required Plaintiff to travel to Memphis, Tennessee to visit her before she passed away. Plaintiff remained in Memphis for approximately two weeks

to attend her sister-in-law's funeral. Plaintiff alleges that she had discussed her two weeks of leave with Bell, who had approved the leave. Plaintiff faxed a confirmation letter to Bell advising that Plaintiff would return to work on August 25, 2009. Plaintiff also called St. Mary's call-in phone line and left a message to confirm that the information regarding her leave had been received. Under the terms of the St. Mary's CBA, however, Plaintiff was only entitled to one day of bereavement leave.

Upon her return on August 25, 2009, St. Mary's Hospital terminated Plaintiff's employment for taking excessive leave without management approval as required by the St. Mary's CBA. Compl. ¶¶ 11, 37. On August 26, 2009, USW Local 9899 filed a grievance on Plaintiff's behalf under the terms of the St. Mary's CBA. ECF No. 9 Ex. 3. The grievance was withdrawn by the USW prior to arbitration based "strictly upon the merits of the case." ECF No. 9 Ex. 4. In its response to Plaintiff's National Labor Relations Board charge against the USW, the Union explained why it decided not to pursue Plaintiff's grievance: (1) she had no documentation approving her leave; (2) did not speak with the employer regarding her bereavement leave or extending that leave; and (3) did not verify or even follow up with St. Mary's to see if any request to extend her leave had been approved. These failures all occurred within the context of the USW's finding that Plaintiff had "enough time . . . to secure a properly approved leave prior to leaving for the out of state funeral." ECF No. 9 Ex. 5.

On March 30, 2010, Plaintiff filed the above-referenced charge with the NLRB alleging that the union breached its duty of fair representation by withdrawing the grievance. ECF No. 9 Ex. 6. After conducting an investigation, the NLRB dismissed Plaintiff's charge and concluded that "further proceedings are not warranted." ECF No. 9 Ex. 7. On or about August 24, 2011, Plaintiff filed a complaint against Sodexo Management, Bell, and other Sodexo entities in the Saginaw County Circuit Court. Count I of her Complaint alleged tortious interference with contract and

Count II alleged tortious interference with a business relationship. Plaintiff alleged that Bell approved her leave of absence and then lied about doing so, resulting in Plaintiff's employment being terminated. Compl. ¶ 38. In her Complaint, Plaintiff identified and quoted from the St. Mary's CBA and stated that she was entitled to enforce the provisions of that agreement:

> 12. On February 1, 2005 Employer, St. Mary's, and the Plaintiffs' Union, United Steelworkers of America, AFL-CIO-CLC entered into a collective bargaining agreement covering the employees, including plaintiff, in the abovementioned bargaining unit, which agreement was in force during the entire period involved herein and/or was subsequently renewed at a time after January 31, 2009. The Agreement was entered into by the Employer and Union, in part, for the benefit of the employees in the bargaining unit, and plaintiff, as a member of such bargaining unit, is entitled to the benefit of the agreement to enforce the provisions of the agreement.
>
> 13. As is clearly stated in the Contract/Agreement any dismissal, suspension, and or other disciplinary action "shall be only for just cause" [See Article IX of Agreement].

Compl. ¶¶ 12-13. Defendants filed a timely notice of removal on on the grounds that Plaintiff's claims are preempted by Section 301 of the LMRA. Plaintiff then filed a motion to remand, contending that Section 301 does not preempt her claims because neither claim requires interpretation of the CBA. ECF No. 6.

## I. Discussion

### A. Section 301 Preemption Standard

Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"),

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Section 301 preempts state law claims that substantially implicate the meaning of collective bargaining agreement terms. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)

(citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95 (1962)). "[A] suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Id.* This rule is necessitated by the need for uniformity and predictability in interpreting the meaning of contract terms. *Id.* at 211.

> As the Supreme Court has clarified, however,
>
> § 301 pre-emption ... says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements....
>
> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Lingle v. Norge Div. of Magic Chef, Inc*., 486 U.S. 399, 409-10 (1988) (footnote omitted). Thus, state courts may evaluate state law claims "involving labor-management relations only if such [claims] do not require construing collective-bargaining agreements." *Id.* at 411.

Given the importance of maintaining uniform federal law, the Supreme Court "has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement." *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1329 (6th Cir. 1989) (en banc). Preemption under § 301 applies not only to state-law contract claims, but has been expanded to include state-law tort claims as well. *Id.* at 1329-30 (citing *Allis-Chalmers Corp*., 471 U.S. at 217). Not every tort claim, however, relating to employment will be subject to preemption under § 301. *Id.* at 1330. To survive preemption under § 301, the tort claims must be "independent" of the CBA. *Lingle*, 486 U.S. at 409-10; *Allis-Chalmers Corp*., 471 U.S. at 213 (analyzing state-law claim to determine if it was "independent of any right established by contract, or, instead, whether evaluation

of the tort claim [was] inextricably intertwined with consideration of the terms of the labor contract"); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994).

To determine whether a state-law claim is sufficiently "independent" to survive § 301 preemption, the Sixth Circuit has adopted a two-step inquiry. *DeCoe*, 32 F.3d at 216-17. First, courts must determine whether resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement. If so, the claim is preempted. Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. *Id.* at 216. If the rights were created by the collective bargaining agreement, the claim is preempted. In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

In order to make the first determination, the court is not bound by the "well-pleaded complaint" rule, but rather, looks to the essence of the plaintiff's claim, in order to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989). If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement. *Dougherty v. Parsec, Inc.*, 872 F.2d 766, 770 (6th Cir.1989). Moreover, neither a tangential relationship to the CBA, nor the defendant's assertion of the contract as an affirmative defense will transform an otherwise independent claim into a claim dependent on the labor contract. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990).

### B.   Preemption of Plaintiff's Claims

Plaintiff's first claim alleges tortious interference with contractual relations. The Sixth Circuit has made clear that tortious interference with contractual relations claims are preempted if,

but only if, breach of contract is an "essential element" of such a state law claim. *Fox*, 914 F.2d at 800 (citing *Beard v. Carrollton R.R.*, 893 F.2d 117, 122 & n.1 (6th Cir. 1989)(considering Kentucky law claim); *Dougherty v. Parsec, Inc*., 872 F.2d 766, 770 (6th Cir. 1989)). Otherwise, such claims are not preempted because they "can be resolved without interpreting" CBA terms. *See Lingle*, 486 U.S. at 410. In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy. *Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 365-67 (2005); *Feaheny v. Caldwell*, 175 Mich. App. 291, 301-03 (1989). The elements of tortious interference with a contract claim under Michigan law are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Badiee*, 265 Mich. App. at 366-67; *Mahrle v. Danke*, 216 Mich. App. 343, 350 (1996). Plaintiff argues that her tortious interference with a contract claim is not preempted because she "did not allege a violation of the collective bargaining agreement" and that "there was no such violation." ECF No. 6 at 7. Her claim, however, requires that she prove a breach of the CBA—the only contract at issue in the case—which in turn requires review and analysis of the St. Mary's CBA. Because Plaintiff must show that the St. Mary's CBA was breached to maintain her tortious interference with a contract claim, this case necessarily involves the interpretation of the St. Mary's CBA and Plaintiff's first claim is thus preempted.

Because Plaintiff's first claim is preempted, the Court has supplemental jurisdiction over Plaintiff's second claim for tortious interference claim with a business relationship. 28 U.S.C. § 1367 (providing supplemental jurisdiction for a state law claim so related to the claim providing the basis of federal jurisdiction that they form part of the same case or controversy).  However, Plaintiff's second claim is also preempted by Section 301. The elements of tortious interference

with a business relationship or expectancy under Michigan law are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Badiee*, 265 Mich. App. at 365-66; *Mino v. Clio School Dist.*, 255 Mich. App. 60, 78 (2003).

The question of whether the elements of a tortious interference with a business relationship claim should be considered independent of the CBA was answered by the Sixth Circuit in *DeCoe*, which held that § 301 preempted the plaintiff's claim of tortious interference with economic relations (construed as tortious interference with a business relationship). The Sixth Circuit concluded that the claim was preempted because it asserted a right created not by state law, but by the collective bargaining agreement step of the inquiry. *DeCoe*, 32 F.3d at 218 ("[R]esolution of the plaintiff's claim will not involve the direct interpretation of [the] CBA, but . . . will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA."). In *DeCoe*, the plaintiffs' claims sought to vindicate rights created by the collective bargaining agreements. Plaintiff alleges that Defendants "interfered with Plaintiff's business relationship with St. Mary's Hospital." Compl. ¶ 48. Plaintiff's relationship with St. Mary's Hospital was created and defined by the CBA. *DeCoe* thus requires that Plaintiff's claim for tortious interference with a business relationship be preempted because she alleges interference with a business relationship that was "created entirely by the CBA." *DeCoe*, 32 F.3d at 218.

Plaintiff has not established the existence of any external regime of state law that would

allow her to allege violations of rights independent from the rights created by the CBA. The cases she advances explain that the plaintiffs' claims survived preemption, in part, because the claims asserted were for retaliatory discharge, age discrimination, and intentional infliction of emotional distress which are rights created by virtue of state law—independent from the plaintiffs' rights created by the applicable CBAs . *See O'Shea v. Detroit News*, 887 F.2d 683, 686-87 (6th Cir. 1989) (en banc); *see also Harmon v. Paintsville Hosp. Co.*, LLC, 2011 LEXIS 118923 (E.D. Ky. 2011). Plaintiff's complaint, by contrast, alleged violations of rights established only by the CBA.

## II. Conclusion

Accordingly, Plaintiff's motion to remand (ECF No. 6) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 16, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 16, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS